**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MIDWEST ATHLETICS AND SPORTS ALLIANCE LLC**, <br><br> *Plaintiff,* <br><br> v. <br><br> **RICOH USA, INC.,** <br><br> *Defendant.* | **Case No. 2:19-cv-00514-JDW** |

<u>**MEMORANDUM**</u>

For nearly a year, Plaintiff Midwest Athletics and Sports Alliance LLC ("MASA") and Defendant Ricoh USA, Inc. have disputed whether certain documents in MASA's possession are privileged from discovery. Despite numerous opportunities to demonstrate that the challenged documents are privileged, MASA, for the most part, has not met its burden and must produce these documents to Ricoh, as outlined below.

**I.      FACTUAL BACKGROUND**

On January 5, 2018, MASA sued Ricoh for alleged infringement of certain printing-related patents. MASA acquired the patents from Eastman Kodak pursuant to a Patent Purchase Agreement that the parties signed on June 29, 2017. The law firm Kramer Levin Naftalis & Frankel LLP represented Kodak in connection with the PPA. Separately, Kramer Levin represented MASA in connection with its corporate formation. The firm did not represent MASA with respect to the initial execution of the PPA. After the parties signed the PPA, however, Kramer Levin began to represent both MASA and Kodak in connection with extensions to the PPA to allow MASA additional time to obtain funding. MASA eventually engaged a funder, Brickell Key Asset

Management. It is not clear to the Court whether Brickell funded the patent purchase, the instant litigation, or both.

On September 13, 2019, the Parties submitted a joint letter seeking the Court's intervention in a discovery dispute. (ECF No. 165.)  Specifically, Ricoh sought production of certain categories of documents that MASA contended were privileged and, therefore, not subject to disclosure. Ricoh contends that these documents are responsive to its Requests for Production Nos. 1, 4, 19, 20, & 23, which seek documents related to MASA's acquisition of the patents from Kodak.[1]  Ricoh also seeks to compel discovery responses and documents related to any analyses or valuation of the asserted patents, as requested in Ricoh's Interrogatory No. 9 and RFP No 8. While its motion was pending, Ricoh attempted to gain access to the discovery by other means and served a subpoena on MASA's counsel in the Northern District of California. The Honorable Virginia DeMarchi issued multiple rulings related to the subpoena between December 2019 and April 2020.

Meanwhile, on April 14, 2020, the above-captioned matter was reassigned, and the Court held a telephonic status conference on April 27, 2020. On May 22, 2020, as directed during the call with the Court, the Parties submitted an updated joint letter setting forth their discovery dispute. (ECF No. 166.)  On June 12, 2020, following a virtual *Markman* hearing, the Parties summarized their ongoing discovery dispute for the Court. Because the dispute centers on MASA's claims of privilege, the Court directed MASA to submit a privilege log, so that Ricoh, and the Court, could evaluate MASA's claims.

On July 24, 2020, the Parties submitted yet another joint letter to the Court, setting forth their positions regarding MASA's claims of privilege. (ECF No. 170.)  The Parties attached an

---

[1]      Ricoh also sought to compel a response to its Interrogatory No. 8, but the Parties confirmed that MASA provided a response, so this particular interrogatory is no longer at issue.

initial privilege log from MASA dated July 2, 2020 (ECF No. 170-1) and an amended privilege log dated July 21, 2020, to their joint letter (ECF No. 170-2). The Court has focused on the Amended Log in resolving the present motion.

## II.   LEGAL STANDARDS

### A.   Attorney Client Privilege

Because this case arises under federal law, federal common law of privilege applies. Fed. R. Evid. 501. The attorney-client privilege applies to documents that are "(1) … communication[s] (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct. 12, 2007) (quotation omitted). The simple act of speaking with an attorney does not render the communication privileged. *See FTC v. Abbvie, Inc.*, No. 14-cv-5151, 2015 WL 8623076, at *3 (E.D. Pa. Dec. 14, 2015) ("[T]he involvement of an attorney in the communication does not mean that the privilege must apply."). Rather, "to successfully assert the attorney-client privilege, the corporation 'must clearly demonstrate that the communication in question was made for the express purpose of securing legal … advice[.]'" *SodexoMAGIC, LLC v. Drexel Univ.*, 291 F. Supp.3d 681, 684 (E.D. Pa. 2018) (quotation omitted).

"[I]f persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." *In re Teleglobe*, 493 F.3d at 361. However, the privilege applies when a client communicates with a third party who is "acting as the **agent of a duly qualified attorney** under circumstances that would otherwise be sufficient to invoke the privilege." *SodexoMAGIC*, 291 F. Supp. 3d at 684 (quotation omitted) (emphasis added); *see also Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991) ("[T]he client may allow disclosure to an 'agent' **assisting the attorney** in

giving legal advice to the client without waiving the privilege.") (emphasis added); *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) ("[T]he privilege must include all the persons who act as **the attorney's agents**.") (emphasis added).

In addition, two exceptions apply to the rule concerning third parties. First, the joint representation or co-client doctrine "applies when multiple clients hire the same counsel to represent them on a matter of common interest[.]" *In re Teleglobe*, 493 F.3d at 359. "When co-clients and their common attorneys communicate with one another, those communications are 'in confidence' for privilege purposes." *Id.* at 363.

Second, the "the common interest doctrine protects parties, with shared interest in actual or potential litigation against a common adversary, from waiving their right to assert privilege when they share privileged information." *Gelman v. W2 Ltd.*, No. 14-cv-6548, 2016 WL 8716248, at *3 (E.D. Pa. Feb. 5, 2016) (quotation omitted). Unlike joint representation, the common interest exception "comes into play when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities." *In re Teleglobe*, 493 F.3d at 359. The legal activities may be litigation or transactional matters, but "the privilege only applies when clients are represented by separate counsel." *Id.* at 365.

To invoke the common interest doctrine, "members of the community of interest must share at least a substantially similar legal interest." *Id.* The common interest doctrine requires that the parties be represented by separate counsel and "that the clients' separate attorneys share information (and not the clients themselves) …." *Id.* at 364; *see also Gelman*, 2016 WL 8716248 at *5 (common interest doctrine "shields only communications or correspondence as between attorneys representing different clients, and not between the separately-represented clients themselves"); *FTC*, 2015 WL 8623076 at *3 ("The doctrine applies only where attorneys, not the

clients, share the information."). Sharing a mere common commercial interest is insufficient to trigger the doctrine. *See Gelman*, 2016 WL 8716248 at *3. To be substantially similar, "the interests . . . must be closer to 'legally identical' than to 'legally similar.'" *Id.* at *4.

### B.    Work Product Protection

Federal Rule of Civil Procedure 26(b)(3)(A) protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Work product protection applies to documents that "were (1) created in reasonable anticipation of litigation by or for a party and (2) prepared primarily for the purpose of litigation." *FTC*, 2015 WL 8623076 at *4 (citation omitted).

### C.    Burden Of Proof

When asserting privilege, a party must "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005). Federal Rule of Civil Procedure 37(a)(1) permits a party to "move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1). The movant "bears the initial burden of proving the relevance of the requested information." *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 415 F. Supp.3d 498, 505 (E.D. Pa. 2019) (quotation omitted). Once that burden is met, however, "the burden shifts to the objecting party to establish the grounds for its objection; where, as here, a party objects on the grounds of attorney-client privilege or work-product protection, the objecting party bears the burden of establishing that the privilege or work-

product protection applies." *Id.* Typically, the objecting party provides this information "by affidavit or deposition testimony." *SmithKline*, 232 F.R.D. at 482 (quote omitted).

## III.    ANALYSIS

### A.    Attorney-Client Privilege

MASA has asserted the attorney-client privilege for every document on its privilege log. For most, the inclusion of third parties on the correspondence destroys any privilege. Even for the communications between MASA and Kramer Levin attorneys, the Court cannot determine whether the privilege applies.

<u>*Communications That Do Not Include An Attorney*</u>. MASA claims privilege for many documents that do not include an attorney. While it is possible that non-lawyers relayed privileged advice, nothing in the description indicates that to be the case or even suggests it is a possibility. The privilege therefore does not apply to Document Nos. 17, 19a-19c, 19e, 19g-19l, 20b-20d, 20k, 20n, 20p-20q, 20s-20v, 20x, 21b-21g, 21i, 22f-22g, 22i-22j, 28b, 30a, 30c, 32a, 32d, 41-45, and 49-50.

<u>*Communications with Brickell*</u>. Brickell provided funding to MASA. It did not acquire an interest in the asserted patents. That relationship is not enough to create a common interest. Thus, MASA's disclosure of privileged communications to Brickell waived any applicable privilege. Indeed, Document 30a is a communication between two Brickell employees. The Court is hard-pressed to understand how MASA could have a privilege in that communication. The Court rejects MASA's assertion of privilege for Document Nos. 17, 19, 23-25p, 27a-27b, 28a-28b, 30a-30b, 30h-30o, and 31.

<u>*Communications With Ocean Tomo*</u>. MASA claims that Kramer Levin hired Ocean Tomo to help obtain funding for MASA pursuant to the PPA between MASA and Kodak. That

engagement does not convert MASA into Kramer Levin's agent, however. An attorney's agent is one who helps the attorney render legal advice. *See, e.g., Sunnyside Manor, Inc. v. Twp. of Wall*, No. 02-cv-2902, 2005 WL 6569572, at \*2 (D.N.J. Dec. 22, 2005); *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997). Think an accountant to help the attorney understand financial records, a translator, or an engineer to help understand mechanical issues. Kramer Levin did not hire Ocean Tomo to help Kramer Levin render legal advice. It hired Ocean Tomo to help MASA in a business transaction. Ocean Tomo's role would not extend the privilege if MASA hired it directly. That analysis does not change just by having counsel sign the engagement letter with Ocean Tomo. The Court rejects MASA's assertion of privilege for Document Nos. 14-14d, 14f-14t, 15-18g, 22-24, 25-25h, 25j-25p, 26a-26f, 26k-26p, 27a-27b, 28a, 30, 30b-30r, 30t, 30w-30bb, 32-32l, 36, 38-38a, 40, and 41-50.

*Communications With iLex Analytica, Price Waterhouse, VP Tax Services, Covington & Burling, and Pansing Hogan Ernst & Bachman.* MASA asserts privilege for documents disclosed to employees of these entities. It offers no explanation about what role any of them served, who hired them, or why disclosure to them preserved the privilege. It therefore has not satisfied its burden. Even if MASA had tried to make such a showing, the Court would reject it for the same reason that it rejected MASA's arguments about Ocean Tomo. Namely, it appears that these entities were helping MASA obtain funding or advising third parties that were transactionally adverse to MASA. They were not helping Kramer Levin offer legal advice or offering legal advice to MASA. The Court rejects MASA's assertion of privilege for Document Nos. 9a,19-20e, 20i, 20k, 20m-21j, 24-24c, 25a-25b, 25f-25g, 25k, and 25l.

*Communications Involving Kodak.* Document Nos. 55-58 appear to focus on the time after MASA and Kodak executed the PPA, but before the deal closed. During that time, the parties

executed three extensions to the PPA. Kramer Levin represented Kodak in connection with the sale of the patents to MASA. It represented MASA in connection with MASA's formation. After walking that tightrope (whether successfully remains to be seen), it undertook a joint representation after the execution of the PPA for the narrow purpose of negotiating its extension. Although Kramer Levin has not provided engagement letters, it has supported these facts with deposition testimony, which is sufficient. Although MASA has demonstrated that the joint representation exception may apply to Document Nos. 54a, 55-58, it has not demonstrated that those documents include privileged communications. Indeed, the document descriptions suggest they do not. For example, Document 57 describes an email attaching a signed amendment to the PPA. An attorney's transmission of the PPA, without a request for or rendering legal advice, is not privileged. The Court will give MASA an opportunity to supplement its privilege log to include descriptions of these emails that demonstrate they fall within the ambit of the privilege.

_Communications Only Between Kramer Levin And MASA_. Several documents on the Amended Log reflect communications only between Kramer Levin and MASA. Document Nos. 1-8b, 12, and 13 relate to MASA's formation. MASA has established that Kramer Levin represented it for that purpose. However, again, the descriptions on the log leave the Court uncertain about whether the communications request or render legal advice or are ministerial in nature. MASA may supplement the Amended Log to demonstrate that the privilege applies.

MASA has sprinkled through the Amended Log other communications between it and Kramer Levin, including Document Nos. 9, 10-11c, 14e, 14u-14v, 20f-20h, 20j, 20l, 26, 26g-26j, 27, 27c, 28, 28c, 29-29b, 30s, 30u-30v, 33-35e, 37-37h, 38b-39, 40a-40c, 51, 53-54, and 54b-54c. The Court cannot discern from the description of these documents whether Kramer Levin was communicating with MASA in its capacity as Kodak's counsel or as MASA's counsel. The Court

also cannot tell if any of the emails contain requests for or the provision of legal advice, if they are ministerial communications, if they offer business advice, or if they serve some other purpose altogether. The Court will give MASA one final opportunity to supplement its Amended Log to demonstrate that the privilege applies.

### B.     Work Product

MASA has not established that the work product doctrine protects any of the documents listed on the Amended Log. For many of the documents, the Amended Log establishes that the doctrine does **not** apply because the documents are transactional. These include documents relating to MASA's formation, drafting and execution of various agreements, invoices, and the terms of MASA's engagement of Kramer Levin. They include Document Nos. 1-13, 23-23b, 25-30bb, 37-37h, 46-48g, and 52-58. MASA argued at the conclusion of the *Markman* hearing that "everything [at MASA] is done with [sic] there is a contemplation of litigation in mind." (Hearing Transcript 06/12/20 ("Tr.") at 123:3-4.)  MASA must do more to demonstrate that the work production doctrine applies to these documents. It is possible that these documents have some indirect connection to litigation because MASA was formed in order to monetize patents through litigation. But work product requires a more direct relationship. Unless the attorney client privilege applies, MASA must produce these documents.

MASA's descriptions of the remainder of documents do not permit the Court to determine whether the work product doctrine applies. The Court suspects—strongly—that the doctrine does not apply, and that the documents are transactional documents concerning MASA's efforts to secure funding. For example, Document No. 17 provides background information about MASA, and Document No. 18 concerns a scheduled call with Brickell. Document Nos. 19-21 concern correspondence with or about Brickell's audit committee. For these and other documents, the

descriptions on the Amended Log tend towards the conclusion that the work product doctrine does not apply. But the Court cannot say for sure.

The circumstances tempt the Court to hold that MASA has waived its work product claim. It waited for almost a year before preparing a privilege log, and both its initial log and its Amended Log fail to carry its burden of establishing that the doctrine applies. However, that course risks forcing the production of documents that might be privileged. So, in an abundance of caution, the Court will give MASA one more opportunity to prepare a privilege log that establishes that the work product doctrine justifies withholding remaining documents. However, the Court expects MASA to comply with this opinion and to reconsider its assertion of work product where appropriate. If MASA persists in withholding transactional documents or other documents that were not prepared primarily in anticipation of litigation, the Court will award fees for any necessary motion to compel the production of those documents.

### C.      Relevance Of Valuation Documents

MASA has withheld from its production communications with potential funders other than Brickell. The record before the Court does not permit the Court to determine what MASA has withheld or whether those documents might be relevant. To the extent the documents shed any light on the valuation of the patents at issue in this case, they are relevant to damages. Moreover, if MASA shared them with potential funders, they are not privileged, for the reasons stated above. MASA must identify for Ricoh the types of documents it has withheld, including their subject matter, so that the parties can continue to meet and confer on this issue.

## IV.      CONCLUSION

MASA's privilege assertions are way too broad. The Court will not permit most of them. However, it will give MASA one final chance to supplement its log. To the extent MASA is

withholding any third-party financial analyses or valuations of the patents on the basis of privilege,

MASA must include those documents on the log or risk waiver.  Any supplemental log must be

consistent with this decision. If this decision leads to the conclusion that a document is not

privileged, or that MASA waived the privilege, then MASA should produce the documents. If

MASA withholds documents improperly and there is another motion raising similar grounds, the

Court will award attorneys' fees to the prevailing party.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 16, 2020