# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MIDWEST ATHLETICS AND SPORTS ALLIANCE LLC**, *Plaintiff,* v. **RICOH USA, INC.**, *Defendant.* | Case No. 2:19-cv-00514-JDW |

## MEMORANDUM

Litigation is a roll of the dice in many respects. Parties do not know what facts will come out in discovery, how a judge will rule, or how a jury will see their case. And, like any gamble, parties are wise to hedge their bets to reduce uncertainty. One way to do that is to include in a case as many claims or defenses as Rule 11 allows, in the hopes that one of them prevails.

That hedging often comes in the form of disclosures to the other side because, unlike poker, in litigation a party has to show its cards. Disclosures happen in every case, but patent cases employ special procedures to keep parties' discovery efforts focused. Infringement contentions, in which a plaintiff discloses each of its theories as to how particular products infringe on each claim of each patent at issue, are one such patent-specific disclosure. Like contention interrogatories in other cases, those infringement contentions provide important guidance for discovery and the scope of the case more broadly. If a plaintiff could change its infringement theory late in a

case, without regard to what it put in its infringement contentions, then the contentions would not have served their purpose. A Plaintiff in a patent case has an incentive to disclose any viable theory of which it is aware, and its failure to do so has to have consequences.

Midwest Athletics and Sports Alliance LLC ("MASA") has offered expert reports that propose infringement theories that differ in significant ways from the infringement theories that MASA put in its infringement contentions. It claims that the Court's claim construction decision justified its new theories. The Court disagrees. MASA could have articulated the theories it now advances during fact discovery, but it chose not to do so, in part because it bet that the Court would adopt its own claim constructions. Now, MASA will have to live with the consequences of that gamble.

## I.  BACKGROUND

In January of 2018, MASA filed its Complaint against Ricoh USA, Inc., alleging direct infringement of nineteen different patents. MASA filed an Amended Complaint on April 16, 2018. MASA also filed a second infringement suit against Ricoh in July 2019, alleging infringement of three of the same patents: *Midwest Athletics and Sports Alliance, LLC v. Ricoh USA, Inc.*, No. 19-cv-3423. The Court has consolidated the two cases, and MASA has narrowed its infringement claims to five patents: (a) 6,718,285; (b) 6,411,314; (c) 6,509,974; (d) 7,720,425; and (e) 7,502,582.

The Court's Scheduling Order required MASA to serve final infringement contentions on March 29, 2019, before the close of discovery. MASA served its Initial

Disclosure of Asserted Claims and Infringement Contentions (the "Infringement Contentions") by that deadline, but it reserved the right to supplement or amend them. In the Infringement Contentions, MASA only asserted claims of direct infringement. It stated that it was "not alleging indirect infringement of the Asserted Claims at this time." (ECF No. 195-21 at 9.) MASA never sought leave to amend the Infringement Contentions, nor did it serve amended or supplemental infringement contentions.

On August 9, 2019, the Parties submitted a Joint Claim Construction Chart that disclosed each claim term that the Parties proposed for claim construction, each Party's proposed construction, and the intrinsic evidence on which that Party based its position. They served an amended Joint Claim Construction Statement that included proposed constructions of claims in the '582 Patent, among other things. On August 30, 2019, the Parties filed opening claim construction briefs, and they filed responses on September 30, 2019. Fact discovery closed on October 30, 2019. The Court conducted a *Markman* hearing on June 12, 2020, and issued a claim construction opinion on October 21, 2020. The parties served opening expert reports on November 18, 2020, and they completed expert discovery on January 22, 2021.

Ricoh contends that MASA's experts served expert reports that go beyond the infringement theories that MASA disclosed in its Infringement Contentions, so it filed this motion to strike those expert opinions. The dispute centers around opinions that experts offered concerning three of the five patents at issue.

### A. The Workflow Patents

The '314 and '974 Patents (the "Workflow Patents") relate to workflow management software for the processing of a print job. In its Infringement Contentions, MASA identified two software products, Ricoh TotalFlow and Ricoh TotalFlow Prep, as the "Accused Products of the '314 Patent." (ECF No. 195-21 at 3.) MASA identified two other software products, Ricoh Process Director and Ricoh Process Director Express, as the "Accused Products of the '974 Patent." (*Id.* at 4.) MASA did not accuse any of Ricoh's hardware products of infringing the Workflow Patents.

In claim construction briefing, the Parties asked the Court to construe Claim 1 of the '314 Patent—"a first user input device for selectively associating at least two of said first, second and third visual representations"—and Claim 2 of the '974 Patent—"input device." (ECF No. 118-1 at 3, 16.) In its claim construction brief, Ricoh argued that the term "input device" in both claims referred to a mouse, keyboard, or other hardware device that sends data to a computer. (ECF No. 122 at 14, 21-22.) MASA took the position that an "input device" was "a user interface for receiving inputs," *i.e.* software, but acknowledged that "[t]he input devices described by the '974 Patent include graphical user interfaces as well as physical devices, such as a keyboard or a mouse." (ECF No. 123 at 3.) During the *Markman* hearing, MASA acknowledged (again) that these claims "could also include the physical devices[.]" (Tr. 6/12/20 Hearing at 29:9.) On October 21, 2020, the Court issued its claim

construction opinion and construed the term "input device" to refer to "a hardware device." (ECF No. 175 at 9-10, 15.)

Michael Mitzenmacher, Ph.D. issued an expert report on behalf of MASA regarding Ricoh's alleged infringement of the Workflow Patents. Dr. Mitzenmacher's report raises various new infringement theories, including new infringing instrumentalities, that MASA did not disclose in its Infringement Contentions.

*First*, in addition to opining that the TotalFlow Prep software infringes the '314 Patent, Dr. Mitzenmacher opines that the "input devices for TotalFlow Prep's user interface and the Ricoh Multifunction Printers/Copiers that provide scanned documents to TotalFlow Prep" also infringe the '314 Patent. (ECF No. 195-32 at ¶¶ 54, 61.) Dr. Mitzenmacher also opines that, aside from the ProcessDirector and ProcessDirector Express software, "input devices for ProcessDirector's user interface, Ricoh Printers that support ProcessDirector functionality and Ricoh Multifunction Printers/Copiers that have scan to folder functionality" also infringe the '974 Patent. (*Id.* at ¶¶ 62, 74-75.) Again, MASA did not list any of these instrumentalities as "Accused Products" for either of the Workflow Patents in its Infringement Contentions.

*Second*, Dr. Mitzenmacher asserts that Ricoh performs divided infringement of the Workflow Patents by (a) "putting the input device (e.g. mouse) into service and receiv[ing] the benefit of its intended purpose" and (b) "directing and controlling the use [of] an input device (e.g. mouse) to perform drag and drop actions, right clicks, menus and buttons and other mouse actions within the GUI for selectively

5

associating visual representations of documents and pages." (ECF No. 195-32 at ¶¶ 181, 189, 643, 645; *see also id.* at ¶ 100.) Dr. Mitzenmacher also opines that Ricoh infringes the Workflow Patents, pursuant to a divided infringement theory because "the acts of its users are attributable to Ricoh because they [Ricoh] design the code that performs the infringing functionality." (*Id.* at ¶¶ 234, 463; *see also id.* at ¶ 100.) MASA did not articulate either of these divided infringement theories in its Infringement Contentions.

*Third*, Dr. Mitzenmacher asserts that Ricoh performs indirect infringement of the Workflow Patents "by directing and controlling its users to perform drag and drop actions, right clicks, menus and buttons and other mouse actions within the GUI." (*Id.* at ¶¶ 238, 465; *see also id.* at ¶ 101.) MASA did not assert any indirect infringement claims in its Amended Complaint and disclaimed such a theory in its Infringement Contentions.

MASA also served an expert report of David Drews, CLP, regarding its alleged damages. As part of his damages analysis, Mr. Drews calculated MASA's alleged damages based upon Ricoh's revenue from the sale of its software products, *i.e.* Ricoh TotalFlow Prep, Ricoh ProcessDirector, and Ricoh ProcessDirector Express, as well as the "multifunction printers and copiers that can operate with" those software products. (ECF No. 195-9 at 29.)

**B.     The '582 Patent**

The '582 Patent relates to printing a color image with at least five different color toners and the application of a clear toner overcoat on top. In its Infringement

Contentions, MASA contended that the Ricoh Pro C7100X and Ricoh C7110X printers satisfied Claim limitation 1(c) of the '582 Patent—"subjecting the clear toner overcoat and the at least pentachrome color image to a gloss enhancing process"—because those printers "include[] a system for subjecting the clear overcoat and the at least a pentachrome color image to a Duplo Ultra 300A UV Coater to add a gloss coating." (ECF No. 195-19 at 7.) The prior owner of the '582 Patent had provided MASA with a claim chart that contended that the printers satisfied the same claim limitation by "us[ing] a fusing belt to fuse printout that has been deposited with a clear toner overcoat. The fusing belt also provides enhanced gloss to the printout." (ECF No. 195-53 at 6.) However, MASA elected not to include that theory in its Infringement Contentions. In fact, during an *inter partes* review of the '582 Patent that Xerox Corporation initiated, MASA disclaimed such a theory and argued to the Patent Trial and Appeal Board that "enhancing the gloss properties of the pentachrome image and overcoat using a gloss enhancing process … is separate from any clear coat fusing process that may be applied to the image" and "[t]his gloss enhancing process is not a simple fusion step." (ECF No. 195-30 at 3, 6.) The Parties did not select the term "gloss enhancing process" in the '582 Patent as one that required construction. (*See* ECF No. 121.)

On November 17, 2020, Bruce Kahn, Ph.D. issued an expert report on behalf of MASA regarding Ricoh's alleged infringement of the '425 and '582 Patents. Like Dr. Mitzenmacher, Dr. Kahn raises new infringement theories that MASA did not disclose in its Infringement Contentions. He opines that in addition to using a UV

7

Coater to enhance the gloss of the pentachrome image with clear toner overcoat, Ricoh's accused products can infringe the '582 Patent by "enhanc[ing] the gloss of pentachrome images with the gloss enhancement provided by a clear toner overcoat" and "enhanc[ing] the gloss of images when the pentachrome image passes through the printer." (ECF No. 195-24 at ¶ 115.) During his deposition, Dr. Kahn collapsed these two theories into one that requires the fusing of a clear toner overcoat to a pentachrome color image. (ECF No. 195-25 at 174:6 – 178:18.) MASA did not disclose this fusing theory in its Infringement Contentions and disclaimed the theory before the PTAB.

## II. STANDARD

Infringement contentions are like "initial disclosures" under Federal Rule of Civil Procedure 26(a). *See ViaTech Techs., Inc. v. Microsoft Corp.*, No. 17-cv-570, 2021 WL 663057, at *1 (D. Del. Feb. 19, 2021). Thus, late or unmade disclosures are subject to exclusion under Federal Rule of Civil Procedure 37(c)(1). *See id.*; Fed. R. Civ. P. 37(c)(1). The movant bears the burden to establish that exclusion is the most appropriate remedy. *See Accurso v. Infra-Red Servs., Inc.*, 169 F. Supp. 3d 612, 615 (E.D. Pa. 2016) (citations omitted).

## III. DISCUSSION

### A. Timeliness Of MASA's New Infringement Disclosures

MASA disclosed new infringement theories for the first time in Dr. Kahn's and Dr. Mitzenmacher's expert reports. "Opening expert reports are not the appropriate time to disclose new infringement allegations." *TQ Delta, LLC v. ADTRAN, Inc.*, No.

8

14-cv-954, 2019 WL 4346530, at *2 (D. Del. Sept. 12, 2019); *see also Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC*, No. 11-cv-1634, 2015 WL 11142427, at *8 (N.D. Ga. May 21, 2015), *report and recommendation adopted*, 2015 WL 11142424 (N.D. Ga. June 16, 2015) ("A 'party may not use an expert report to introduce new infringement theories, [or] new infringing instrumentalities, … not disclosed in the parties' infringement contentions …."); *Takeda Pharm. Co. v. TWi Pharms., Inc.*, No. 13-cv-2420, 2015 WL 1227817, at *3 (N.D. Cal. Mar. 17, 2015) (same); *ASUS Computer Int'l v. Round Rock Rsch., LLC*, No. 12-cv-2099, 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) (same).

With respect to the '582 Patent, MASA's Infringement Contentions disclose fusing an image to a sheet using a fuser station as means of satisfying Claim 2, but that is distinct from the gloss enhancing process that is part of Claim 1. For Claim 1, the Infringement Contentions do not assert any sort of fusing theory and, instead, rely on the use of Duplo Ultra 300A UV Coater to add a gloss coating. MASA's new infringement theories related to fusing a clear toner overcoat to a pentachrome color image—raised for the first time in Dr. Kahn's report—are untimely. Indeed, MASA knew about this potential theory when it acquired the '582 Patent from its prior owner.

Likewise, MASA concedes that it did not disclose its new infringement theories for the Workflow Patents in its Infringement Contentions. Nevertheless, MASA contends that its new disclosures were timely because it asserted these theories to conform with the Court's claim construction order. The fact that the Court adopted

9

a construction different than what MASA proposed does not justify a sea change in MASA's infringement contentions. If it did, then the infringement contentions would not have served any purpose in discovery. MASA relies on a series of cases in which the district courts permitted a party to amend its infringement contentions following claim construction. However, all of those cases are distinguishable because, unlike the parties in those cases, MASA never sought leave to amend its Infringement Contentions, nor did it serve Ricoh with amended or supplemental contentions.

MASA also cites various local patent rules from around the country. But those rules do not give a party carte blanche to amend infringement contentions after a claim construction opinion. Instead, they just cite a claim construction opinion as an example of an event that might provide good cause for amended contentions. Certainly, if the Court adopts a construction different than either party proposed, good cause might exist. It might also exist in other circumstances. But MASA made no effort to show that good cause existed to permit it to alter its theories without consequence, either after it received the Court's claim construction ruling or now.

In considering MASA's arguments, bears noting that MASA had the opportunity to offer its new infringement theories during fact discovery, and it chose not to do so. Even though MASA asserted that the Workflow Patents' "input device" should be construed as a software user interface, MASA acknowledged that the term also included "physical devices, such as a keyboard or a mouse." (ECF No. 123 at 3.) That was in August 2019. MASA did not need to wait for the Court to rule on claim construction before amending its Infringement Contentions to identify new accused

10

products that included hardware and to assert divided and indirect infringement theories based on the use of that hardware. It could and should have hedged its bets by including the theory in its Infringement Contentions during fact discovery. Having failed to do so, it must live with the potential consequences of its choice.

B.   **The Possibility Of Exclusion**

In the Third Circuit, "exclusion of critical evidence is an 'extreme' sanction[.]" *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297 (3d Cir. 2012) (citations omitted). Thus, before a court imposes such a sanction, it must consider the following factors: "(1) 'the prejudice or surprise in fact of the party against whom' … the excluded evidence would have been offered; (2) 'the ability of that party to cure the prejudice'; (3) the extent to which allowing such … evidence would 'disrupt the orderly and efficient trial of the case …'; (4) any 'bad faith or willfulness in failing to comply with the court's order'; and (5) the importance of the excluded evidence." *Id.* at 298 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-905 (3d Cir.1977), *overruled on other grounds by*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985)). Lesser sanctions include an order directing payment of the reasonable expenses, including attorney's fees. *See* Fed. R. Civ. P. 37(c)(1)(A).

1.   **Prejudice or surprise**

MASA's late disclosures, including its claims of divided and indirect infringement, the inclusion of additional accused products for the Workflow Patents, and the gloss enhancement theory based on fusing, have prejudiced Ricoh. Like other defendants faced with belated infringement theories, Ricoh struggles to articulate its

11

precise alleged prejudice. *See, e.g.*, *Finjan, Inc v. Rapid7, Inc.*, No. 18-cv-1519, 2020 WL 5798545, at *3 (D. Del. Sept. 29, 2020). At a minimum, however, if MASA had included these theories in its Infringement Contentions or amended those contentions in a timely fashion, then Ricoh could have (a) developed the record regarding Ricoh's lack of intent to induce others to perform the claimed methods or that its actions would lead to the alleged patent infringement, (b) developed the record regarding non-infringing uses of the accused products, (c) developed evidence about the steps that Ricoh performs and the steps that users perform under a divided infringement theory; (d) sought third party discovery concerning the prosecution history of the '582 patent and the "gloss enhancing process," or (e) sought claim construction of the term "gloss enhancing process." This is sufficient to demonstrate the surprise or prejudice necessary to warrant exclusion. Fact discovery had been closed for over a year by the time Ricoh learned about MASA's new infringement theories. Though Ricoh's experts were able to muster a limited response to MASA's new theories, and Ricoh had a chance to depose MASA's experts, "it would be unjust to penalize [Ricoh] for doing its best under difficult circumstances." *Finjan*, 2020 WL 5798545 at *3 (citation omitted).

### 2. Ability to cure/trial disruption

The Court has not set a trial date. Given the Court's backlog of cases due to the Covid-19 pandemic, the Court might not be able to schedule a trial in this matter until 2022 or later. Thus, there is ample time for Ricoh to take additional discovery and develop the record with respect to these new theories. In addition, given the fact

that MASA has accused Ricoh of infringing the '582 Patent in a subsequent lawsuit, there is some efficiency to be gained with respect to that patent. However, forcing Ricoh to bear the expense associated with these efforts would prejudice Ricoh. Thus, the only way to avoid further prejudice to Ricoh would be to require MASA to shoulder Ricoh's reasonable costs and fees from re-opening discovery. Indeed, the Court may impose such monetary sanctions even if exclusion, the more extreme remedy, is not warranted. *See* Fed. R. Civ. P. 37(c)(1)(A).

### 3. Bad faith or willfulness

Willfulness and bad faith "involve[] intentional or self-serving behavior." *Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 875 (3d Cir. 1994). However, because the exclusion of critical evidence is an extreme sanction, courts will not impose such a remedy "absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Diawara v. United States*, No. 18-cv-3520, 2020 WL 6262983, at *8 (E.D. Pa. Oct. 23, 2020) (quotation omitted).

MASA understood that "input devices" included hardware as early as August 2019, and it disclaimed any assertions of indirect infringement in its Infringement Contentions. MASA also knew that using a fusing belt could enhance the gloss on pentachrome images, but it did not disclose that theory in its Infringement Contentions either. In fact, MASA disclaimed the fusing theory when it appeared before PTAB. MASA sprung these new theories on Ricoh for the first time in its expert reports, after years of litigation. "No court likes to say that a party acted in

13

bad faith[,]" but the Court questions how MASA and its attorneys could have thought that such conduct fell within expected standards of practice. *ViaTech Techs., Inc. v. Microsoft Corp.*, No. 17-cv-570, 2021 WL 663057, at *5 (D. Del. Feb. 19, 2021). Even if MASA did not act in bad faith, its conduct appears willful, at a minimum.

### 4. Importance of the new infringement theories

Finally, the Court must consider the importance of MASA's new infringement theories. This factor "is often the most significant …." *ZF Meritor*, 696 F.3d at 298 (citation omitted). In this instance, this factor cuts against exclusion of MASA's new infringement theories. Given the Court's construction of "input device," MASA must point to some hardware product in order to prove infringement of the Workflow Patents by Ricoh. In addition, even though MASA's new gloss enhancement theory "affects only one of many claim elements, every claim element is important because every element must be met for a product to infringe." *Finjan*, 2020 WL 5798545 at *3. Thus, while untimely and prejudicial, MASA's new infringement theories are important to its claims in this case.

## IV. CONCLUSION

MASA's conduct in this case is concerning. However, because there is ample time to remedy MASA's belated and prejudicial disclosures, the Court will deny Ricoh's Motion to Strike. Although the Court will not strike MASA's expert reports, it will give Ricoh an opportunity to address and rebut the new opinions, which may include additional discovery. Having engaged in willful conduct that prejudiced Ricoh in this matter, MASA must bear the reasonable cost of curing such prejudice.

14

Thus, the Court will direct the Parties to confer and propose a schedule to provide Ricoh with that opportunity. Of course, if MASA does not want to bear those expenses, it can choose to disclaim its new theories to eliminate any prejudice to Ricoh. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

May 12, 2021