## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**MIDWEST ATHLETICS AND
SPORTS ALLIANCE LLC**,

Case No. 2:19-cv-00514-JDW

*Plaintiff,*

v.

**RICOH USA, INC.,**

*Defendant.*

## MEMORANDUM

After years of litigation, the Parties have whittled this patent infringement
case down to five remaining patents that relate to printing in some fashion. Plaintiff
Midwest Athletics and Sports Alliance LLC ("MASA") has not mustered enough
evidence to demonstrate a triable factual dispute on its infringement claims, let alone
that it is entitled to summary judgment. The Court will therefore enter summary
judgment as to non-infringement in favor of Defendant Ricoh USA, Inc.

## I. BACKGROUND

In January of 2018, MASA filed its Complaint against Ricoh, alleging direct
infringement of nineteen different patents. MASA filed an Amended Complaint on
April 16, 2018. MASA also filed a second infringement suit against Ricoh in July
2019, alleging infringement of three of the same patents: *Midwest Athletics and
Sports Alliance, LLC v. Ricoh USA, Inc.*, No. 19-cv-3423. The Court has consolidated

the two cases, and MASA has narrowed its infringement claims to five patents: (a) 6,718,285; (b) 7,720,425; (c) 7,502,582; (d) 6,411,314; and (e) 6,509,974.

The '285 Patent relates to the operation and maintenance of printing systems, including tracking the life of operator replaceable components in printers and sending alerts to the printer operator to replace those components. MASA contends that a user can use the Ricoh Aficio SP C410DN, the Ricoh Pro C5200s/C5210s, and the Ricoh Pro C900/C900s/C901/C901s (the "'285 Accused Products") to infringe this patent.

The '425 Patent and '582 Patent (the "Pentachrome Patents") relate to improving the quality of color and gloss in a printed document by printing five-color images. MASA contends that one can use the Ricoh Pro C7100X and Ricoh Pro C7110X (the "Pentachrome Accused Products") to infringe these patents.

The '314 Patent and the '974 Patent (the "Workflow Patents") relate to managing the workflow process for a print job. MASA contends that one can use Ricoh's software products, TotalFlow and TotalFlow Prep, as well as input devices for TotalFlow Prep's user interface and the Ricoh Multifunction Printers/Copiers that provide scanned documents to TotalFlow Prep (the "'314 Accused Products") to infringe the '314 Patent. With respect to the '974 Patent, MASA contends that one can use additional Ricoh software products, ProcessDirector and ProcessDirector Express, along with input devices for ProcessDirector's user interface and Ricoh Printers that support ProcessDirector functionality and Ricoh Multifunction

Printers/Copiers that have scan to folder functionality (the "'974 Accused Products")
to infringe that patent.

Both Parties filed motions for summary judgment, which are ripe for
disposition.

## II.   STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to
enter, summary judgment "if the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary
judgment, after adequate time for discovery and upon motion, against a party who
fails to make a showing sufficient to establish the existence of an element essential
to that party's case, and on which that party will bear the burden of proof at trial."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a
summary judgment motion, a court must "view the facts and draw reasonable
inferences 'in the light most favorable to the party opposing the [summary judgment]
motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However,
"[t]he non-moving party may not merely deny the allegations in the moving party's
pleadings; instead he must show where in the record there exists a genuine dispute
over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)
(citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B). Thus, a blanket denial to an
asserted fact, without more, is insufficient. "If a party fails to . . . properly address
another party's assertion of fact as required by Rule 56(c), the court may . . . consider

the fact undisputed for purposes of the motion; [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"  Fed. R. Civ. P. 56(e)(2)-(3).

The filing of cross-motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (quotation omitted). Rather, "[w]hen confronted with cross-motions for summary judgment 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), *aff'd*, 435 F.3d 431 (3d Cir. 2006).

## III.   DISCUSSION

### A.   Applicable Law

#### 1.   Divided infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a). For method claims, "[d]irect infringement under § 271(a) occurs where all steps … are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Under a divided or

joint infringement theory, a defendant will be held responsible for third parties' infringement where the defendant directs or controls those third parties' performance. *See id.* Divided or joint infringement applies only to method claims. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016).

Sufficient direction or control occurs where the alleged infringer "'conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method' and 'establishes the manner or timing of that performance.'" *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1376 (Fed. Cir. 2017) (quotations omitted). While "conditioning" is not limited to legal obligations or technological prerequisites, *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1367 (Fed. Cir. 2017), "mere guidance or instruction is insufficient …." *Travel Sentry*, 877 F.3d at 1379 (quotation omitted). And the mere existence of some contractual relationship is not enough unless the contract "impose[s] an obligation on the allegedly 'controlled' party to perform the infringing steps." *Grecia v. VUDU, Inc.*, No. 14-cv-775, 2015 WL 538486, at *4 (N.D. Cal. Feb. 9, 2015); *see also Deep9 Corp. v. Barnes & Noble, Inc.*, No. 11-cv-35, 2012 WL 4336726, at *12 (W.D. Wash. Sept. 21, 2012), *aff'd*, 504 F. App'x 923 (Fed. Cir. 2013).

Ultimately, what is significant is whether the defendant has "'delineat[ed] the steps' that customers would have to perform 'if [they] wish[ed] to use [defendant's] product.'" *Eli Lilly*, 845 F.3d at 1367 n.5; *see also Travel Sentry*, 877 F.3d at 1380. "The 'direction or control' test requires the controlling party to be, in effect, the 'mastermind' of the entire process." *Midwest Energy Emissions Corp. v. Vistra Energy*

5

*Corp.*, No. 19-cv-1334, 2020 WL 3316056, at *9 (D. Del. June 18, 2020), *report and recommendation adopted*, 2020 WL 8265330 (D. Del. July 15, 2020). Under this test, general instruction manuals, tip sheets, or other guidance that illustrate how to do something but do not require or control it will generally not exert the requisite control. These types of materials can demonstrate sufficient direction or control only if they instruct (that is mandate or require) end users to use a defendant's products in an infringing manner. *See, e.g.*, *Kolcraft Enterprises, Inc. v. Chicco USA, Inc.*, No. 09-cv-3339, 2019 WL 4242482, at *6 (N.D. Ill. Sept. 6, 2019), *appeal dismissed*, No. 2020-1053, 2019 WL 12042053 (Fed. Cir. Oct. 31, 2019), *and aff'd sub nom.*, *Kolcraft Enterprises, Inc. v. Artsana USA, Inc.*, 819 F. App'x 939 (Fed. Cir. 2020).

### 2. Indirect infringement

A defendant may be liable for indirect infringement under a theory of induced infringement or contributory infringement. See 35 U.S.C. §§ 271(b), (c). To prove induced infringement, a plaintiff must show that: "(1) with knowledge of or willful blindness to the existence of the patent-in-suit; (2) the defendant engaged in affirmative acts to induce (e.g., by persuading, leading, or influencing) a third party to perform acts that; (3) the defendant knew constituted infringement of the patent-in-suit (or was willfully blind to that fact); (4) with the specific intent to cause such infringement; and which (5) resulted in the third party directly infringing the patent-at-issue." *Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*, No. 14-cv-6650, 2015 WL 3755223, at *5 (E.D. Pa. June 15, 2015). To prove contributory infringement, a plaintiff must establish: "1) that there is direct infringement, 2) that the accused

infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (citation omitted).

## B.   Scope Of Claims

The Parties' summary judgment briefs discuss both direct and indirect infringement, but MASA has not asserted indirect infringement claims in this case. Direct and indirect infringement are different: the Patent Act "provides different provisions for infringement through supply of a device for infringement"—induced infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c). *Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*, 497 F. Supp. 3d 762, 767 (N.D. Cal. 2020) (quoting *Sentius Int'l, LLC v. Apple Inc.*, No. 20-cv-477, 2020 WL 6081775, at *4 (N.D. Cal. Oct. 15, 2020)). As a result, "[t]he Federal Circuit has consistently analyzed provision of infringing devices under these standards, not the direct infringement of section 271(a)." *Id.*

MASA's operative Complaint asserts claims only of direct infringement under 35 U.S.C. § 271(a) (ECF No. 26), and MASA's Infringement Contentions make clear that MASA is "not alleging indirect infringement of the Asserted Claims …." (ECF No. 195-21 at 9.) Then, in opposing Ricoh's summary judgment motion, MASA chides Ricoh for "seek[ing] summary judgment of no indirect infringement … when MASA did not assert such claims." (ECF No. 207 at 1.) MASA also does not accuse Ricoh of indirect infringement in its own motion for summary judgment. (*See generally* ECF No. 193-1.) Because MASA has made clear that it is not asserting a claim for indirect

infringement, the Court will preclude MASA from basing its summary judgment arguments on indirect infringement theories.

### C.    The '285 Patent

#### 1.    Claims 1, 2, & 5

Claims 2 and 5 of the '285 Patent depend on Claim 1, which recites "a use mechanism coupled to each said computational element and said ORC devices, said use mechanism tracking use of at least one of said [operator replaceable component ("ORC")] devices using a predetermined parameter."  (ECF No. 26-7 at 14:19-23.) The Court construed Claim 1 as a means-plus-function claim. The function is the "tracking use of at least one of said ORC devices using a predetermined parameter," while the corresponding structure is: "A controller, with a database management system, coupled to each computational element and ORC device and that is programmed to (1) receive data for each ORC device detailing the ORC device's usage and (2) maintain an object file for each ORC device indicating the remaining life of the ORC device based on customer usage."  (ECF No. 175 at 22.) Ricoh is entitled to summary judgment on MASA's claim for infringement of Claims 1-2 and 5 because MASA has not established that the '285 Accused Products have the requisite structure claimed in Claim 1. MASA relies entirely on the opinion of its expert, Larry Stauffer, Ph.D., to establish infringement, but Dr. Stauffer's opinions fall short in several important respects.

*First*, Dr. Stauffer never asserts that each accused printer has a controller **with** a database management system. At best, Dr. Stauffer points to various

controller specifications, but none of those specifications says anything about a database management system. Moreover, Dr. Stauffer does not point to any evidence that a database management system exists in any of the accused printers. In fact, his report mentions a database management system only once, when reciting the Court's claim construction, and then never again.

*Second*, Dr. Stauffer does not explain how any of the controllers in the '285 Accused Products are coupled to each computational element and each ORC device, as the claim language requires. While Dr. Stauffer indicates that a central processing unit ("CPU") is a computational element, he offers no corresponding explanation (or evidence) as to why or how this is so. In addition, Dr. Stauffer's report does not explain how any controller is coupled with **each** of the ORC devices he identifies.

*Third*, Dr. Stauffer does not provide any evidence how the controllers are programmed, let alone that they are programmed to perform the two-step algorithm identified during claim construction: 1) receive data for each ORC device detailing the ORC device's usage; and (2) maintain an object file for each ORC device indicating the remaining life of the ORC device based on customer usage. Indeed, Dr. Stauffer did not look at any description of software or any source code when determining how the '285 Accused Products operate. Instead, MASA and its expert rely on the "result of executing the programming by the controller executing the programming rather than the specific algorithm itself." (ECF No. 207 at 6.) But evidence that does "nothing more than demonstrate that the accused products reach the same result" rather than "the steps used by the accused products to arrive at the result" does not

establish infringement. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) (quotations omitted). In addition, aside from reciting the Court's construction of this claim, Dr. Stauffer's report does not even mention an object file, nor does he identify any object files or point to any evidence as to whether the '285 Accused Products maintain such files.

Given these failures of proof, MASA has failed to set forth any evidence that the '285 Accused Products have the required structure to satisfy the "use mechanism" claim. Ricoh is entitled to summary judgment of non-infringement on Claims 1-2 and 5 of the '285 Patent.

### 2.     Claim 14

Claim 14 of the '285 Patent claims:

> A method for providing operator maintenance on a system having a plurality of [ORC] devices, comprising: providing the expected life span of each of the [ORC] devices; determining a remaining life span for the [ORC] device having the shortest expected life span; comparing said remaining life span with a predetermined threshold; responding to a result of the comparing step indicating that said predetermined threshold has been exceeded; and notifying the operator on a periodic basis that said predetermined threshold has been exceeded.

(ECF No. 26-7 at 14:65 – 15:13.) "To infringe a method claim, a person must have practiced all steps of the claimed method." *Lucent*, 580 F.3d at 1317. MASA relies on a theory of divided infringement to support its claim that Ricoh infringes Claim 14, asserting that "Ricoh is liable for infringement under section 271(a) because it directs or controls its users' performance of the method claim though providing operating manuals and instructions to its users" and offers training programs. (ECF No. 211 at 5.) But MASA has no evidence that Ricoh performed the steps of the patented method,

nor that it has directed anyone to perform the steps in question. It only has evidence that Ricoh provided operating manuals and instructions, without any evidence that Ricoh mandates compliance with those materials.

The divided infringement cases in which the Federal Circuit has found sufficient direction or control to impose liability on a defendant for the acts of a third party all "involve[] some version of offline control and conditioned benefit over users." *Sapphire Crossing*, 497 F. Supp. 3d at 767 (quote omitted). That is, those cases involved "real world," literal, control and conditioning, "not control through a device." *Id.* Thus, MASA cannot prevail on its claim against Ricoh for direct infringement based on a divided infringement theory where Ricoh only provides the '285 Accused Printers that might perform the steps set forth in Claim 14.

Having determined that MASA cannot assert a divided infringement theory as to Claim 14, the Court will not permit MASA to change course and assert a claim against Ricoh for indirect infringement. Even if MASA had asserted such a claim— and it has not—it did not muster any evidence to support a claim of indirect infringement of Claim 14 of the '285 Patent. Thus, Ricoh is entitled to summary judgment on Claim 14.

### D.   The Pentachrome Patents

#### 1.   Divided infringement

Both Pentachrome Patents include method claims that recite printing at least a pentachrome color image onto a piece of paper and then applying a clear toner overcoat to that image. MASA does not offer any evidence that Ricoh uses the

Pentachrome Accused Products to perform these steps. Instead, MASA relies on a divided infringement theory to support its claim.

MASA's theory of divided infringement fails because it has not presented any evidence that Ricoh directs or controls its customers' performance of the steps recited in the Pentachrome Patents' method claims. As an initial matter, MASA has not identified any evidence that any third party actually performed these methods using one of the Pentachrome Accused Products. In addition, the evidence that MASA relies on does not demonstrate the sort of direction and control by Ricoh necessary to support its divided infringement claims. Indeed, the "Tips and Best Practices" document to which MASA points does not direct or control operators' performance of each step of the Pentachrome Patents' method claims. At most, that document advises operators that clear toner may be applied in two passes, "with CMYK first and Clear second." (ECF No. 195-24 at ¶ 132.) Aside from the fact that the "Tips and Best Practices" refers to just four colors (as opposed to five), that document does not mandate that an operator apply a clear toner overcoat during a second pass. On the contrary, the document indicates that clear toner can be applied during a single or a second pass, and it even cautions that applying clear toner in a second pass "may also affect the CMYK color accuracy." (*Id.*) Ricoh's tips about applying a clear toner overcoat during a second pass is mere guidance that falls well short of the level or direction or control necessary to impose liability on Ricoh pursuant to a divided infringement theory. *See Travel Sentry*, 877 F.3d at 1379.

### 2.   The '582 Patent

Even if MASA could prevail on its divided infringement theory, Ricoh would still be entitled to summary judgment on non-infringement of the '582 Patent. The last step of Claim 1 of the '582 Patent, a method claim, recites: "subjecting the clear toner overcoat and the at least pentachrome color image to a gloss enhancing process." (ECF No. 26-11 at 14:6-17.) MASA's expert, Bruce Kahn, Ph.D., opines that there are three ways that the Pentachrome Accused Products meet this claim element: 1) "[T]he Pentachrome Accused Products can enhance the gloss of pentachrome images with the gloss enhancement provided by a clear toner overcoat"; 2) "[C]omponents in the Accused Products also enhance the gloss of images when the pentachrome image passes through the printer"; and 3) "[G]loss can be enhanced by using a UV Coater." (ECF No. 195-24 at ¶ 115.) However, Dr. Kahn's theories fail either because MASA has waived them or because MASA has failed to demonstrate that Ricoh, or a third party under its control, utilized the Pentachrome Accused Products as described.

During his deposition, Dr. Kahn clarified that applying a clear toner overcoat and passing a pentachrome image through the printer both involve fusing. However, during an *inter partes* review proceeding, MASA argued that fusing is not the same as the gloss enhancing process recited in Claim 1 of the '582 Patent. MASA's argument constitutes a prosecution disclaimer, a point that Ricoh makes in its summary judgment briefs. MASA failed to address Ricoh's argument in its opposition. That failure amounts to waiver. However, even if MASA had not waived opposition

to this argument, prosecution disclaimer would bar Dr. Kahn's opinions that the Pentachrome Accused Products can infringe the '582 Patent by fusing a clear toner overcoat to a pentachrome image.

Prosecution disclaimer can arise from statements that a patent owner makes during IPR proceedings. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360-61 (Fed. Cir. 2017). The doctrine will apply when the alleged disclaimer is "'both clear and unmistakable to one of ordinary skill in the art.' … If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established." *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1357-58 (Fed. Cir. 2017) (cleaned up). There is no dispute that when opposing Xerox's IPR Petition, MASA told the PTAB that a fusing process is separate and different than the "gloss enhancing process" in Claim 1 of the '582 Patent. (ECF No. 195-2 at ¶ 95; ECF No. 207-1 at ¶ 95.) In fact, MASA was unequivocal that the "gloss enhancing process is not a simple fusion step[,]" and "a fusion step and a gloss enhancing step are two separate processes …." (ECF No. 195-30 at 6, 10; *see also id.* at 8.) MASA's numerous statements are both clear and unmistakable. As a result, MASA has disclaimed that "simply fusing a clear toner overcoat reads on the claimed gloss enhancing process." (*Id.* at 7.) Having disclaimed this construction, MASA could never prevail on its present infringement theories involving fusing because the Court would not construe the "gloss enhancing process" term as fusing. Thus, Dr. Kahn's opinion that fusing a clear toner overcoat to a pentachrome color image enhances gloss is insufficient to create a genuine dispute of material fact of infringement.

Likewise, Dr. Kahn's opinion that a UV coater can be used to "enable" the Pentachrome Accused Products to perform the gloss enhancing process does not create a factual dispute because MASA has not put forth any evidence that Ricoh has used any UV coater in conjunction with any of the Pentachrome Accused Products in order to perform the claimed method. The fact that Ricoh entered into a reseller agreement with Duplo and could sell Duplo's UV coaters in conjunction with Ricoh products does not create a genuine dispute of material fact that Ricoh uses those coaters to infringe the '582 Patent. Dr. Kahn's assumption that Ricoh "must have" used the Duplo UV coaters together with the actual Pentachrome Accused Products or tested them to make sure they worked together is insufficient to overcome summary judgment because it is only an assumption, not evidence or even an opinion backed by evidence. Assuming that testing occurred, without any supporting evidence in the record, "contradicts ... well-established law that a patentee must prove infringement by a preponderance of the evidence." *Meyer Intell. Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1370 (Fed. Cir. 2012). MASA also has no evidence that Ricoh directed any of its customers to use a UV coater in conjunction with the Pentachrome Accused Products to enhance gloss on the pentachrome images. Thus, MASA's claim of infringement of the '582 Patent would fail for these reasons as well.

### 3. The '425 Patent

As with the '582 Patent, Ricoh would still be entitled to summary judgment on MASA's claim for infringement of the '425 Patent even if MASA had a viable divided infringement theory. Claim 1 of that patent recites: "passing a receiver member

through the printer apparatus to serially deposit thereon in a single pass at least five different colors which form various combinations of color at different pixel locations to form a pentachrome image thereon[.]"  (ECF No. 26-13 at 13:64 – 14:3.) There is no dispute that the Pentachrome Accused Products do not serially deposit five different colors onto a piece of paper. Instead, the printers deposit the colors onto a transfer belt, which then transfers them onto the paper.

MASA has not overcome the "heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aylus*, 856 F.3d at 1358 (quoting *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013)). The relevant claim language requires that a piece of paper, i.e., the receiver member, pass through the printer apparatus "to serially deposit **thereon** in a single pass at least five different colors … to form a pentachrome image **thereon**[.]"  (ECF No. 26-13 at 13:64 – 14:3 (emphasis added).) Both instances of use of the adverb "thereon" relate to the object of the phrase: the receiver member (piece of paper) that is passing through the printer. MASA does not contend that the transfer belt is the receiver member. Instead, it argues that the claim does not differentiate between "directly" or "indirectly" depositing color onto the paper. However, by using the term "thereon," the claim does differentiate between the two and makes clear that the toner is to be deposited onto the paper itself. Because there is no dispute that the Pentachrome Accused Products do not serially deposit at least five different colors onto paper, Ricoh is entitled to summary judgment on MASA's claim for infringement of the '425 Patent.

MASA cannot rely on the doctrine of equivalents to avoid this outcome because the disclosure-dedication doctrine bars its application. "Under the disclosure-dedication rule, subject matter disclosed by a patentee, but not claimed, is considered dedicated to the public." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1334 (Fed. Cir. 2019), *cert. denied sub nom.*, *Dr. Reddy's Lab'ys, Ltd. v. Eli Lilly & Co.*, 141 S. Ct. 112 (U.S. 2020). The reason for the doctrine is that members of the public reading a disclosure of particular subject matter are entitled, absent a claim to it, to assume that it is not patented and therefore dedicated to the public. *See id.* Thus, once an equivalent has been dedicated to the public, "the patent owner cannot prevail on its doctrine of equivalents infringement claim based on that equivalent." *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed. Cir. 2020) (citation omitted). "To determine whether the disclosure-dedication doctrine applies in a given case, [courts] ask whether the specification discloses unclaimed subject matter with 'such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed.'" *Id.* (quotation omitted).

MASA does not dispute that the '425 Patent's specifications disclose an alternative embodiment, i.e.*,* the use of an intermediate transfer belt. (*See* ECF No. 195-24 at n.145, ¶¶ 154, 184.) Instead, MASA contends that the disclosure-dedication doctrine—which only applies to unclaimed subject matter—does not apply because, in MASA's view, the '425 Patent actually claims the alternative embodiment. But it doesn't: the '425 Patent does not claim serial depositing of colored toner onto a transfer member (like a transfer belt) prior to depositing toner onto the piece of paper.

Thus, this alternative embodiment is unclaimed. Because MASA admits that it was disclosed, it is dedicated to the public, and MASA cannot rely on the doctrine of equivalents to save its claim.

### E.    The Workflow Patents

#### 1.    The '974 Patent

##### a.    Claim 2

Claim 2 of the '974 Patent claims "[a] system for providing production printing instructions for a printed end document to a job preparation station" and requires various pieces of hardware, including "a job submission station having a computer" and "an input device connected to said computer for said job submission operator to input instructions to said computer[.]"  (ECF No. 26-5 at 22:38-53.) MASA contends that one can use Ricoh's software—ProcessDirector and ProcessDirector Express— along with input devices for ProcessDirector's user interface and Ricoh Printers that support ProcessDirector functionality and Ricoh Multifunction Printers/Copiers that have scan to folder functionality to infringe this claim. However, Ricoh is entitled to summary judgment on this claim. First, MASA cannot maintain a divided infringement claim as to the '974 Patent's system claim as a matter of law. *See Lyda*, 838 F.3d at 1339 ("Our cases have applied joint infringement to method claims and not system claims."). Second, MASA has not demonstrated that Ricoh makes, uses, offers to sell, or sells the entire claimed system.

Whether the system claim recites capability (as MASA contends) or actual operation does not make a difference, because MASA does not make, use, offer to sell,

or sell the entire system. Indeed, even if "the claim[] merely use[s] permissible functional language to describe the capabilities of the claimed system, it is clear that infringement occurs when one makes, uses, offers to sell, or sells the claimed system." *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1316 (Fed. Cir. 2017). In addition, "one may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000); *see also Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011) (explaining that in order to "make" a system, the alleged infringer "would need to combine all of the claim elements"). This claim fails because Ricoh does not make or sell at least one of the required hardware components of the system—the computer. *See Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1368 (Fed. Cir. 2021) (citations omitted).

Likewise, MASA has not come forward with sufficient evidence to raise a genuine question as to whether Ricoh uses the entire system. "Direct infringement by 'use' of a claimed system requires use of each and every element of the system." *Id.* at 1369 (citing *Centillion*, 631 F.3d at 1284). While "[i]t is certainly true that testing a system may constitute an infringing use[,] … [t]his does not alleviate Plaintiff's burden to demonstrate that testing actually occurred[.]" *Centrak, Inc. v. Sonitor Techs., Inc.*, No. 14-cv-183, 2017 WL 3730617, at *7 (D. Del. Aug. 30, 2017), *rev'd and remanded on other grounds*, 915 F.3d 1360 (Fed. Cir. 2019) (citing *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001)). Like the plaintiff in *Centrak*, MASA's use claim fails because MASA "has not pointed to any evidence of

record … that supports a finding that [Ricoh] has ever used the system in its entirety in performing these tasks." *Id.* at *6. At most, one of Ricoh's software engineers testified that Ricoh's Quality Assurance engineers perform testing on the ProcessDirector software in Boulder, Colorado. However, there is no evidence about what Ricoh tested and whether Ricoh's engineers tested the entire system as claimed. Without more, MASA's evidence cannot overcome summary judgment on this claim. *See id.* at *6-7.

### b.    Claim 1

Claim 1 of the '974 Patent is directed to "[a] method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting …." (ECF No. 26-5 at 22:4-9.) "[D]irect infringement of a method claim requires that each of the claimed steps are performed within the United States[.]" *Meyer Intell.*, 690 F.3d at 1371; *see also Lucent*, 580 F.3d at 1317 ("To infringe a method claim, a person must have practiced all steps of the claimed method."). Like the prior claim, MASA's claim against Ricoh for direct infringement of Claim 1 fails because MASA has not come forward with any evidence that Ricoh performs each step of this claim when it tests ProcessDirector software in Colorado. In fact, there is no evidence in the record as to what this testing entails.

Similarly, MASA has not come forward with sufficient evidence to support its theory of divided infringement. MASA has not pointed to any evidence that Ricoh

directs or controls third parties' performance of each of these steps, such that Ricoh could be held liable for their infringement. The evidence on which MASA relies— Ricoh's user manuals—does not demonstrate that Ricoh conditions its customers' participation in an activity or receipt of a benefit upon performance of each of the steps from Claim 1 of the '974 Patent. It therefore follows that those manuals also do not establish the manner or timing of that performance. Instead, Ricoh's user manuals provide instructions for how users can modify the markup and/or modify document features, such as right-clicking a markup box to display a popup menu with options to edit the markup box or delete it. The manuals also instruct users how to access various menu options by left or right-clicking a mouse.

MASA also points to the fact that Ricoh issues software updates to resolve issues and requires its users to agree to be bound by a software license agreement. However, the user manuals, software fixes, and license agreement on which MASA relies are general in nature, and none of them instructs—much less directs or controls—Ricoh's customers to perform each and every method of Claim 1, which is directed to providing production printing instructions for a plurality of documents in a predefined order. Thus, MASA has not presented evidence to prevail on its theory of divided infringement of Claim 1.

Finally, as set forth above, MASA cannot pursue a claim against Ricoh for indirect infringement Even if had asserted such a claim, it lacks evidence to support that claim. It argues that its expert, Michael Mitzenmacher, Ph.D., "provides ample evidence that Ricoh indirectly infringes" Claim 1 of the '974 Patent. (ECF No. 207 at

22.) But neither MASA nor its expert presents any evidence that each element of a claim of indirect infringement is satisfied. Instead, Dr. Mitzenmacher provides an unsupported legal conclusion that "Ricoh also indirectly infringes by directing and controlling the use an input device (e.g. mouse) to input instructions operative to control, manage, edit, modify and add features for documents via drag and drop actions, right clicks, menus, buttons, presets and other mouse actions within the [graphical user interface]." (ECF No. 195-32 at ¶ 465.) This is insufficient to overcome summary judgment. *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002); *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000); *see also Parallel Networks Licensing, LLC v. Microsoft Corp.*, 777 F. App'x 489, 494 (Fed. Cir. 2019).

### 2.   The '314 Patent

#### a.   Claims 1, 7, & 62

Claim 7 of the '314 Patent depends on Claim 1 (a system claim), which claims: "[a]n interface, implemented in a computer, for representing and controlling a production printing workflow comprising: a display[,]" *inter alia*. (ECF No. 26-3 at 19:36-39.) Claim 62 (another system claim) claims: "[a] system for interfacing to and controlling a production printing workflow" and also recites "a display." (*Id.* at 24:9-29.) Before the Court can address infringement of these claims, however, it must construe the term "display." *See Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000) (explaining that claim construction is the first step of an infringement determination).

A court generally gives the words of a claim their ordinary and customary meaning, which is the "meaning that the term would have to a person of ordinary skill in the art at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWS Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (quotation omitted). While "the claims themselves provide substantial guidance as to the meaning of particular claim terms[,]" a court also must consider the context of the surrounding words. *Id.* at 1314. In addition, the patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Ultimately, the "construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be . . . the correct construction." *Renishaw PLC v. Marposs Societa' per Anzioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

The Parties did not ask the Court to construe "display" during claim construction. At the time, however, the Court agreed with MASA that the '314 Patent specification envisions a graphical user interface ("GUI"), and noted that "the GUI cannot function without a monitor or similar hardware device to display it to[.]"  (ECF No. 175 at 10.) Ricoh is correct that a "display" refers to a hardware device that allows a user to view and interact with the GUI, as opposed to the image itself that is displayed. Indeed, both Claim 1 and Claim 62 require a visual representation and content and formatting instructions to appear "**on** said display," respectively. (ECF No. 26-3 at 19:36-57; 24:9-29 (emphasis added).) Use of the preposition "on" (as

opposed to "in") indicates that the display is a physical device that presents the GUI, rather than the visual depiction of the GUI itself. In addition, "the specification of the '314 Patent clearly distinguishes between the GUI, which is part of the software desktop, and the display, which displays the 'workflow functionality and visual representations.'" *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 19-cv-6036 EAW, 2020 WL 7692767, at *25 (W.D.N.Y. Dec. 28, 2020). Thus, the Court construes "display" in Claims 1 and 62 as a monitor or other hardware device that presents the GUI.

Having determined that both Claims 1 and 62 require a display device, the Court agrees that MASA cannot prevail on its direct infringement claims against Ricoh. MASA contends that Ricoh software products TotalFlow and TotalFlow Prep, as well as input devices for TotalFlow Prep's user interface and the Ricoh Multifunction Printers/Copiers that provide scanned documents to TotalFlow Prep, can be used to infringe the '314 Patent. However, MASA's claim fails for the same reason that the '974 Patent claim failed—there is no evidence in the record that Ricoh makes or sells the requisite hardware—a display device. In addition, there is no evidence in the record that Ricoh uses the alleged system in the United States. Instead, another Ricoh software engineer testified that Ricoh tests the TotalFlow Prep software in Romania, and nothing in the record indicates which specific features it tests. (ECF No. 195-39 at 78:17 – 79:9; ECF No. 195-2 at ¶ 209; ECF No. 207-1 at ¶ 209.) MASA also cannot maintain a divided infringement claim as to the '314 Patent's system claims as a matter of law. *See Lyda*, 838 F.3d at 1339.

Finally, even if MASA could assert a claim against Ricoh for indirect infringement, that claim would also fail. Again, MASA and its expert failed to identify evidence that would establish the various elements necessary to prevail on a claim of contributory infringement or induced infringement. *See Fujitsu*, 620 F.3d at 1326; *Bonutti*, 2015 WL 3755223 at *5. Instead, Dr. Mitzenmacher makes a bald conclusion that "Ricoh also indirectly infringes by directing and controlling its users to perform drag and drop actions, right clicks, menus and buttons and other mouse actions within the GUI." (ECF No. 195-32 at ¶ 238.) Such a conclusory statement is insufficient to survive summary judgment. *See TechSearch*, 286 F.3d at 1372; *Arthur A. Collins*, 216 F.3d at 1046; *see also Parallel Networks*, 777 F. App'x at 494.

### b.    Claim 58

Ricoh is also entitled to summary judgment on MASA's claims of infringement of Claim 58 of the '314 Patent. Claim 58 depends on Claim 51, which is directed to "[a] method of controlling a production printing workflow." (ECF No. 26-3 at 22:61-62.) MASA's claim against Ricoh for direct infringement fails because MASA has not come forward with any evidence that Ricoh performs each step of this claim in the United States. *See Meyer Intell.*, 690 F.3d at 1371; *Lucent*, 580 F.3d at 1317. Rather, the only evidence in the record demonstrates that Ricoh tests the TotalFlow Prep software in Romania, and there is no evidence regarding which specific features it tests. (ECF No. 195-39 at 78:17 – 79:9; No. 195-2 at ¶ 209; ECF No. 207-1 at ¶ 209.)

Nor has MASA presented sufficient evidence to support its theories of divided and indirect infringement. MASA has not identified any third party that has

performed each and every step of Claim 58, nor has it pointed to any evidence that Ricoh directs or controls third parties' performance of each of these steps, such that Ricoh could be held liable for their infringement. Again, Dr. Mitzenmacher points to general user manuals and videos that instruct users how they can utilize drag and drop actions, right clicks, menus, buttons, and other mouse actions within the GUI of the TotalFlow software to perform actions like inserting new pages and rearranging pages within a document. Ricoh also puts out software patches to resolve field issues and requires its users to agree to be bound by a software license agreement. These materials are general in nature, and there is no evidence in the record that they direct users to use Ricoh's products in an infringing manner, i.e., to perform each and every step of Claim 58, which is a method of controlling a production printing workflow. Thus, MASA has not presented evidence to demonstrate that Ricoh is liable for direct infringement based on some unidentified third party's actions.

In addition, even if MASA could assert a claim against Ricoh for indirect infringement, that claim would fail for the same reason MASA's other indirect infringement claims would fail. Namely, Dr. Mitzenmacher's bald conclusion that "Ricoh also indirectly infringes by directing and controlling its users to perform drag and drop actions, right clicks, menus and buttons and other mouse actions within the GUI," (ECF No. 195-32 at ¶ 238), is insufficient to survive summary judgment. *See TechSearch*, 286 F.3d at 1372; *Arthur A. Collins*, 216 F.3d at 1046; *see also Parallel Networks*, 777 F. App'x at 494. Again, neither Dr. Mitzenmacher nor MASA presents evidence to establish the various elements necessary to prevail on a claim of induced

infringement or contributory infringement. *See Bonutti*, 2015 WL 3755223 at \*5; *Fujitsu*, 620 F.3d at 1326. Thus, Ricoh is entitled to summary judgment on this claim as well.

## IV.    CONCLUSION

MASA has not mustered evidence to create a material factual dispute as to direct infringement (including divided infringement). And it has not asserted an indirect infringement claim. The Court will therefore grant summary judgment to Ricoh on all remaining claims in the case. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 23, 2021