IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MIDWEST ATHLETICS AND SPORTS ALLIANCE LLC**,<br><br>*Plaintiff,*<br><br>v.<br><br>**RICOH USA, INC.,**<br><br>*Defendant.* | Case No. 2:19-cv-00514-JDW |

**MEMORANDUM**

The process of litigation is a means to an end: dispute resolution. It's sometimes a crude means. It can impose costs on the parties, including attorneys' fees, employee distraction, and the stress that comes from uncertain outcomes. Those costs go with the territory, and sometimes avoiding those costs motivates people to settle. But when litigation becomes an end, rather than a means, it can prove to be problematic. When the parties before me seem to be using the process and cost of litigation as a hammer to force a settlement, rather than as a dispute resolution tool, then they are misusing it. In the patent context, the use of litigation for such an improper purpose can lead to a declaration that a case is exceptional, which means that the prevailing party can recover its attorneys' fees.

This is one such case. Throughout the case, Plaintiff Midwest Athletics and Sports Alliance, LLC ("MASA") and its lawyers at Kramer Levin Naftalis & Frankel LLP, including its lead counsel Paul Andre, have acted in a way that suggests that they want to keep the case alive by any means necessary in order to maintain economic pressure on Defendant Ricoh USA, Inc. MASA's conduct led Judge Savage to sanction it and award fees to Ricoh before the case was reassigned to me. Since then, MASA's conduct has continued to reflect an unwillingness to accept the reality of its claims: they lack merit. Instead, MASA has dissembled, tap-danced, and otherwise tried to avoid the ultimate outcome that it should have known was inevitable. Because MASA's conduct crossed the line, I will award Ricoh fees for the conduct that Judge Savage declared sanctionable, and I will declare the case exceptional under 35 U.S.C. § 285.

**I.      BACKGROUND**

This case has a long history, and I will not recite all the facts here. Many are in prior decisions in this case, and I incorporate the relevant background by reference. When MASA filed this case, it asserted claims of infringement of U.S. Patent Nos. 7,502,582, 7,720,425, and 8,005,415 (the "Pentachrome Patents"). Each of those patents contained a terminal disclaimer that the Patent Office required, but MASA did not own the other patents that were the subject of the terminal disclaimers, so it lacked standing to assert its claims. Ricoh raised concerns about MASA's standing to assert claims under the Pentachrome Patents, and MASA dissembled. MASA's conduct led Judge Savage to

sanction MASA for that conduct. *See Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*, No. 19-cv-414, 2019 WL 3387061, at * 4 (E.D. Pa. July 25, 2019). Judge Savage's opinion recites MASA's litany of misconduct, which included false assertions to Judge Savage about the ownership of the relevant patents, gross mischaracterizations of the transaction by which MASA finally acquired the relevant patents, and misrepresentations and nonresponsive responses in communications with Ricoh. *See id.* at *3-4. I won't repeat all of Judge Savage's findings here, but I will incorporate them by reference, as they provide an ample factual predicate for sanctions under either Rule 11 (for signed submissions to Judge Savage) and 28 U.S.C. § 1927 (for conduct both before the Court and in dealing with opposing counsel).

After fact discovery closed, MASA's conduct did not improve. It was not until after the close of fact discovery that MASA finally served a privilege log in this case. Its log was inadequate, and I made it serve an amended log. The revised log asserted untenable privilege claims that sought to blur distinctions between various hats that Kramer Levin wore in this case: it was MASA's litigation counsel; it was deal counsel to Kodak when Kodak sold patents to MASA; and it was corporate counsel to MASA for formation purposes. MASA sought to obscure those distinctions and asserted privilege for everything, going so far as to assert a common interest with Kodak even though the two companies were transactionally adverse. It forced Ricoh to pursue ancillary litigation in the Northern District of California, and Magistrate Judge Virginia DeMarchi rejected

MASA's privilege arguments. But even having lost the arguments in California, MASA pressed forward with them here.

When it came time for expert discovery in the case, MASA's approach continued to be problematic. It disclosed new theories of divided infringement in expert reports that it had never disclosed in the case and that it had affirmatively disclaimed. It tried to justify its conduct, but I was hard pressed to think that MASA had a good faith basis for it.

Ultimately, I granted summary judgment to Ricoh on grounds of non-infringement. MASA appealed, and the Federal Circuit summarily affirmed. After the mandate issued, Ricoh moved for attorneys' fees pursuant to 35 U.S.C. § 285. Ricoh also asks the Court to hold MASA's attorneys jointly and severally liable for Judge Savage's prior award of attorneys' fees in July of 2019, in connection with MASA's initial pursuit of the Pentachrome Patents. To no one's surprise, MASA has opposed both motions, arguing that: 1) this case is not an exceptional one warranting fees under the Patent Act; 2) Ricoh cannot recover the attorneys' fees it seeks from MASA's attorneys; and 3) Ricoh's requested fees are unreasonable in any event. Both motions are ripe for disposition.

## II.    ANALYSIS

### A.    Fees Resulting From Pentachrome Standing Issues

The Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (1) pertain to patent law, (2) bear an essential relationship to matters that a statute commits to the Federal Circuit's

4

exclusive control, or (3) clearly implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). Thus, the Court applies Third Circuit law with respect to sanctions under 28 U.S.C. § 1927. Pursuant to that statute, attorneys "who so multipl[y] the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A motion for sanctions pursuant to Section 1927 "should be filed within a reasonable time." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3d Cir. 2008).

    **1.**  **Section 1927 and Kramer Levin**

Ricoh invokes Section 1927 and asks me to apply Judge Savage's sanctions award to Kramer Levin, rather than just to MASA. In most cases, where a Section 1927 motion is premised on attorneys' alleged unreasonable and vexatious conduct that permeated the life of the case, "the determination of what are truly excess costs, expenses, and attorney fees cannot be determined until the close of the litigation." *In re Schaefer*, 542 F.3d at 102 (quotation omitted). This case is different, however, because Ricoh seeks sanctions based on MASA's attorneys' conduct with respect to a specific issue (*i.e.* MASA's standing to assert infringement of the Pentachrome Patents) during a specific period of time (*i.e.* from October 16, 2018 to July 25, 2019). The Third Circuit has not defined the outer limits of what constitutes a reasonable amount of time to seek sanctions under Section 1927.

Ricoh's motion is predicated on Judge Savage's ruling from July 25, 2019, which required "*MASA* to reimburse Ricoh for reasonable attorneys' fees it incurred in litigating MASA's standing to enforce the Pentachrome Patents." (ECF No. 115 at 9 (emphasis added).) The time to do that was when the standing issue resolved, when Kramer Levin's conduct was fresh in Judge Savage's mind. Then, he could have decided whether to expand his sanctions order to include Kramer Levin. Instead, Ricoh waited nearly 3 ½ years to seeks its fees from MASA's attorneys, rendering its motion untimely. *See, e.g.*, *Klein v. Weidner*, No. 08-cv-3798, 2017 WL 2834260, at *7 (E.D. Pa. June 30, 2017) (dismissing motion for sanctions as untimely where party did not file motion until 22 months after the alleged sanctionable conduct occurred); *Home Gambling Network, Inc. v. Piche*, No. 05-cv-610, 2015 WL 1734928, at *19 (D. Nev. Apr. 16, 2015) ("[F]ifteen months after summary judgment cannot be considered reasonable by any standard.").

Because Ricoh's motion is untimely, I will deny it. But that's not to suggest that I'm condoning the way that MASA's lawyers conducted themselves. In its Opposition, MASA tries to blame Ricoh for the standing issue and suggests that it acted in good faith. The record reveals otherwise. The positions that Kramer Levin took in representing MASA were not positions that any reasonable lawyer could take in good faith. They reflect lawyers who would do and say anything to keep their claims alive. I know I'm looking at it with hindsight, but it's hard to square what Kramer Levin lawyers were telling Judge Savage with the facts that those lawyers knew. To the extent that one could read MASA's defense

of its conduct as a request that I reconsider Judge Savage's award of fees, I will not do so. Any such request is untimely. Even if it were timely, the record makes clear that Judge Savage had an ample basis to award Ricoh its costs for the way that MASA handled the issues concerning its standing to assert the Pentachrome Patents.

### 2. Amount of fees for Pentachrome Patent-related conduct

Courts apply local circuit law in evaluating fee petitions. In the Third Circuit, the touchstone of any fee petition is reasonableness. As a result, the party seeking attorneys' fees "bears the ultimate burden" of demonstrating that the proposed fee award is reasonable. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). District courts use a two-step approach to calculate fee awards. "First, a district court should calculate the lodestar—'the number of hours worked multiplied by the prevailing hourly rate'—which carries a 'strong presumption' of 'reasonable[ness]' and 'includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.'" *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 128 (3d Cir. 2017) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 543-44, 546, 552 (2010)) (alteration in original). Second, "[a]fter calculating the lodestar, the court may deviate from it, but only in the 'rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Id.* (quoting *Perdue*, 559 U.S. at 554). In deciding whether and how much to deviate, courts look at the twelve factors laid out in *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See id.*

Hourly rate. A court determines the prevailing rate by looking at "the hourly rate prevailing in the forum in which the litigation is lodged." *Interfaith Cmty.*, 426 F.3d at 704 (quotation omitted). Ricoh argues, and MASA does not dispute, that I should look to the American Intellectual Property Law Association's data to establish a prevailing rate. In doing so, I will focus on rates in Philadelphia, where this case occurred. The conduct that gave rise to Judge Savage's sanctions award occurred in 2018 and 2019. There's no AIPLA data for 2019, but there is data for 2018, so I will use those rates. In 2018, the average rate for partners practicing IP law in Philadelphia was $599 per hour, so I will use this hourly rate for Ryan Walsh and Tracy Stitt's time. The average rate for associates was $482, so I will use that figure for Joshua Nightingale and Lisa Furby's time. While MASA does not challenge Geoffrey Gavin's rate of $726 per hour, I will reduce his rate to the same $599 hourly rate applicable to Mr. Walsh and Ms. Stitt.

Hours worked. Ricoh tells me the hours its lawyers worked on each issue but does not explain why they worked the hours that they did. As the Party seeking to recover its fees, Ricoh bears the burden of demonstrating that the fees its seeks are reasonable, and its cursory treatment doesn't satisfy that burden. On their face, the hours that Ricoh claims seem too high at times, so I will reduce them.

- For the initial letter about the Pentachrome Patents, dated October 16, 2018, Ricoh seeks to recover 16.3 hours of time. The 9-page letter raised three discrete issues, one of which was the unenforceability of the Pentachrome

8

Patents due to a lack of common ownership. That issue consumed about 1 ½ pages. Mr. Walsh claims to have spent 4.3 hours on that letter, and Mr. Nightingale claims 10.8 hours. That seems like too much, even allowing for some of the background research that went into the letter. Therefore, I will reduce Mr. Walsh's billable time to 2 hours and Mr. Nightingale's time to 6 hours for this task. (I will not adjust the time that Mr. Gavin or Ms. Stitt spent on these tasks.)

- Ricoh claims 5.1 hours of Mr. Walsh's time to review MASA's response and to formulate a reply. But MASA's response only had a single, conclusory paragraph about its ownership of the Pentachrome Patents, and Mr. Walsh's reply was a single, short paragraph. Allowing for some additional back-and-forth, I will reduce Mr. Walsh's time on this task to 2 hours.

- Ricoh claims 41 collective hours spent on "further analysis, meet and confers, letter briefing, and Court Involvement with Pentachrome Patents," without enough detail about the exact work that each attorney did. Ricoh had a meet-and-confer with MASA on April 10, 2019, and then submitted a 4 ½ page letter to Judge Savage that day. I accept there was additional work to be done, but I can't determine, for example, whether these are 41 discrete hours or whether multiple lawyers participated on the same call. For example, I note, however, Mr. Walsh, Ms. Stitt, and Mr. Gavin—the most

senior attorneys for whom Ricoh seeks fees—spent the most time on this task. Although they claim a total of 34.7 hours between the three of them, I cannot see how they needed more than 18 hours between them for this work. Therefore, I will allow a total of 18 hours for each of them, split equally. (I will not adjust the time that Mr. Nightingale or Ms. Furby spent on these tasks.)

- Finally, Ricoh claims that it spent a total of 76.6 hours responding to MASA's Motion For Leave To File Second Amended Complaint (ECF No. 98) and preparing its own Motion For Dismissal Of The Pentachrome Patents Pursuant To FRCP 12(c) (ECF No. 101). These motions went through multiple rounds of briefing, including an accompanying Motion to Seal. These were important motions in the case, and I see no reason to adjust these hours. MASA makes a bald assertion that Ricoh's lawyers spent too much time on the briefing, but it doesn't offer any basis for me to understand why it's too long. For example, MASA doesn't tell me how much time its lawyers spent on the briefing on the same motions to set a baseline. Without more, Ricoh's efforts do not seem unreasonable to me, and so I reject MASA's invitation to cut arbitrarily.

In light of the foregoing, MASA must pay a total of $65,346.10 in attorneys' fees to Ricoh, as follows:

| Attorney | Hours | Prevailing Rate | Fees Awarded |
|---|---|---|---|
| Ryan Walsh | 22.4 | $599 | $13,417.60 |
| Tracy Stitt | 66.2 | $599 | $39,653.80 |
| Geoffrey Gavin | 8.1 | $599 | $4,851.90 |
| Joshua Nightingale | 11.6 | $482 | $5,591.20 |
| Lisa Furby | 3.8 | $482 | $1,831.60 |
| **Total** | | | **$65,346.10** |

### B. Exceptional Case Determination

#### 1. Standard

Courts apply the law of the Federal Circuit to motions for attorneys' fees under 35 U.S.C. § 285 because those motions pertain to patent law. Under that statute, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Courts make this determination on a case-by-case basis, "considering the totality of the circumstances." *Id.* A court may look to a variety of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*

at n.6. A prevailing party seeking to recover its attorneys' fees under Section 285 must demonstrate that fees are warranted by a preponderance of the evidence. *See id.* at 557.

### 2. Exceptionalness determination

MASA's case was never very strong, and it litigated the case in a way to make things more difficult, not easier. Those actions, coupled with MASA's unsupported assertions of privilege and its last-minute assertions of new infringement theories demonstrate that MASA litigated this case in an unreasonable manner. The totality of these circumstances make this case an exceptional one, and there is a special need to deter MASA from similar conduct in its latest case against Ricoh.

Ricoh seeks to recover the attorneys' fees it incurred from the close of fact discovery on October 30, 2019, until I granted summary judgment against MASA on August 23, 2021. I will therefore focus my analysis on MASA's conduct during that time. But MASA's conduct didn't occur in a vacuum, and I consider it in context, which includes the conduct that led Judge Savage to sanction MASA and MASA's initial effort to force litigation in Nebraska without a basis to do so. It's not clear that any of that conduct would justify a determination that this case is exceptional. But past is prologue, so it colors what comes later. And the conduct that comes after October 30, 2019, makes this case exceptional.

MASA multiplied the proceedings by asserting unsupported claims of privilege. On September 13, 2019, before discovery closed, the Parties raised a discovery dispute that

flowed from MASA's assertions of privilege. Despite asserting privilege during the discovery period, MASA did not produce a single privilege log to Ricoh until I ordered it to do so by July 2, 2020——nine months after discovery closed. Even after MASA amended its privilege log, I concluded that most of MASA's claims of attorney-client privilege were without merit, as the logged communications either did not include attorneys or included third parties, thereby destroying any claim of privilege. MASA's descriptions of many of the communications were also insufficient to help me discern whether those communications were subject to attorney-client or work product protection. In fact, with respect to MASA's claims of work-product, I had a strong suspicion that the doctrine did not apply at all and was "tempt[ed] … to hold that MASA ha[d] waived" its claim. (ECF No. 172 at 9, 10.) Resolving this issue involved a few rounds of letter-briefs, an ancillary Motion to Seal, and an oral argument following the *Markman* hearing. For the most part, MASA's claims of privilege were overbroad or baseless, yet MASA and its counsel pressed on, despite Judge DeMarchi's rulings in the Northern District of California rejecting many of the same arguments that MASA advanced here. That conduct was unreasonable.

MASA's continued pursuit of its claims after fact discovery closed for the '285 Patent, the Pentachrome Patents, and the Workflow Patents was also unreasonable because MASA lacked evidence for those claims. My subsequent construction of certain claim terms did not alter that fact. For example:

- MASA could not prevail on its claims of infringement of Claims 1, 2, and 5 of the '285 Patent because it did not have evidence that "any of the controllers in the '285 Accused Products are coupled to each computational element and each ORC device, as the claim language requires." (ECF No. 219 at 9.)

- MASA could not prevail on its claim of divided infringement of Claim 14 of the '285 Patent because it had "no evidence that Ricoh performed the steps of the patented method, nor that it has directed anyone to perform the steps in question." (*Id.* at 10-11.)

- MASA could not prevail on its divided infringement claims for the Pentachrome Patents for the same reason——it did not present "any evidence that Ricoh directs or controls its customers' performance of the steps recited in the Pentachrome Patents' method claims." (*Id.* at 12.)

- MASA could not prevail on its infringement claim for Claim 2 of the '974 Patent because MASA had no evidence that Ricoh makes or sells computers, as part of the claimed system. Likewise, MASA had "no evidence about what Ricoh tested and whether Ricoh's engineers tested the entire system as claimed," dooming MASA's infringement claims as to Claims 1 and 2 of the '974 Patent. (*Id.* at 18, 19, 20.)

- Regardless of how I construed the term "display," MASA could not prevail on its infringement claims for Claims 1, 7, and 62 of the '314 Patent because MASA

14

>had no evidence that Ricoh used the alleged system in the United States. (*Id.* at 24.) Similarly, MASA had no evidence that Ricoh performed each step of the method of Claim 58 and no evidence to support its theory of divided infringement. (*See id.* at 25, 26.)

This is not just a rehash of my summary judgment rulings. The point is that I didn't make these decisions after considering a murky summary judgment record. Instead, these evidentiary failings should have been apparent to MASA (or any other reasonable person) after the close of fact discovery. At that point, MASA's claims were very weak, and it was unreasonable for MASA to continue pursuing them.

MASA's approach to its claims also makes the case exceptional because MASA employed a shifting sands approach. In a prior decision, I concluded that "MASA sprung … new theories [of infringement] on Ricoh for the first time in its expert reports, after years of litigation" and questioned "how MASA and its attorneys could have thought that such conduct fell within expected standards of practice." (ECF No. 214 at 13, 14.) Even though it had disavowed any claim of indirect infringement, MASA appeared to grasp at this theory during summary judgment briefing by pointing to its expert's opinion. However, those opinions were mere legal conclusions and lacked evidentiary support. This means that MASA's belated theories of indirect infringement were weak, and it was unreasonable for MASA to attempt to rely on them at the eleventh hour, especially where it had disclaimed them throughout the litigation.

Following the close of fact discovery, the weakness of MASA's claims and its unreasonable manner of litigating this case make this case stand out from others. In addition, there is a compelling need to deter MASA from engaging in similar conduct because MASA is still pursuing claims against Ricoh based on the same patents in another matter pending before me. Other courts have granted an award of fees under Section 285 in the spirit of deterring similar conduct in the future. *See, e.g.*, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017); *Belcher Pharms., LLC v. Hospira, Inc.*, No. 17-cv-775, 2022 WL 606075, at *3 (D. Del. Feb. 3, 2022); *Wi-LAN Inc. v. Sharp Elecs. Corp.*, No. 15-cv-379, 2022 WL 611236, at *7 (D. Del. Feb. 3, 2022), *modified on reconsideration* (D. Del. Apr. 25, 2022); *Drop Stop LLC v. Jian Qing Zhu*, No. 16-cv-7916, 2018 WL 1407031, at *7 (C.D. Cal. Jan. 22, 2018), *aff'd*, 757 F. App'x 994 (Fed. Cir. 2019); *Action Star Enter. Co. v. KaiJet Tech. Int'l, Ltd.*, No. 12-cv-8074, 2015 WL 12752877, at *3 (C.D. Cal. June 24, 2015).

The need to deter MASA from similar misconduct is particularly acute. When MASA first filed its Complaint against Ricoh in *Midwest Athletics and Sports Alliance, LLC v. Ricoh USA, Inc.*, No. 2:20-cv-05871-JDW ("*MASA III*"), it asserted infringement claims of the '582, '425, and '285 Patents, all of which MASA pursued against Ricoh in this matter. Given the overlap between the issues in both cases, I stayed *MASA III* pending a ruling on the Parties' summary judgment motions in this case. After issuing my decision on summary judgment, I had a call with the Parties, and they agreed that it made sense to keep the matter

suspended until the Federal Circuit resolved an appeal from MASA, as the same patents were at issue. Following, the Federal Circuit's affirmance of summary judgment, I lifted the stay, and MASA sought to amend its Complaint in *MASA III*. While it continues to pursue a claim of infringement based on the '285 Patent, MASA has also reasserted infringement claims with respect to the '425 and '756 Patents——patents it decided not to pursue after the close of fact discovery in this matter, in accordance with Judge Savage's case-narrowing orders. (*See* ECF Nos. 144, 147.)

When MASA declined to pursue these two patents, it's fair to assume that MASA and/or its attorneys made some judgment as to the relative strength of MASA's claims as to those patents. Since then, I determined that the only claim limitations at issue in two of the patents were indefinite, and I granted summary judgment on (presumably) MASA's five strongest patents. Now, MASA appears to be going back to the well, attempting to pursue what it had deemed to be weaker claims. Maybe MASA has a good faith basis to do so. But there's also a very real possibility that MASA is trying to keep its claims alive in the hopes that the pressure of litigation—rather than the risk of losing—will force Ricoh to cry uncle and settle. That, of course, would not be permissible. A finding that this case is exceptional will ensure that MASA is on notice of the potential consequences of its actions in *MASA III*, so that it can decide whether the risks of pursuing that case are worth it. I therefore find this case is exceptional, and I will award Ricoh fees pursuant to 35 U.S.C. § 285 for the costs it incurred after the close of fact discovery in this case.

### III. CONCLUSION

Ricoh waited too long to seek to hold MASA's attorneys liable for the fees Ricoh incurred while the Parties disputed MASA's right to enforce the Pentachrome Patents, and not all the attorneys' fees it seeks to recoup from MASA are reasonable. However, this case is an exceptional one, and Ricoh is entitled to recover additional, reasonable attorneys' fees from MASA, pursuant to 35 U.S.C. § 285. Ricoh will have two weeks to prepare an appropriate fee petition. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 18, 2023